IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

LINDSAY A. SAUNDERS,[1]
    Plaintiff,

Civ. 15-2201-CBS

vs.

ANDERS JACOBSON, in his official capacity as Interim Director of the Colorado Division of Youth Corrections; and

ERIN JACOBS, in her official capacity as Director of Platte Valley Youth Services Center,

    Defendants.

## ORDER ON DEFENDANTS' THIRD MOTION TO DISMISS

Magistrate Judge Craig B. Shaffer

    Plaintiff Lindsay A. Saunders sued Defendants Anders Jacobson and Erin Jacobs, in their official capacities for respectively the Colorado Department of Human Services, Division of Youth Corrections ("DYC") and the DYC's Platte Valley Youth Services Center ("Platte Valley) for not permitting her to access local news while she was in Platte Valley's custody. She seeks prospective injunctive relief in the form of requiring Platte Valley to permit her personal subscription to the Denver Post, subject to the facility's existing screening policies. Defendants move to dismiss the action as moot because Plaintiff is no longer in DYC custody and is not expected to return to DYC. For the reasons that follow, the court grants the motion and dismisses this action without prejudice.

---

[1] When Plaintiff filed this action she was a minor, and the case was sealed to maintain confidentiality of her name. Fed. R. Civ. P. 5.2. Plaintiff has since become an adult and does not assert that her name or other information in the docket should be restricted from public access. Accordingly, on October 25, 2016 the case was unsealed. Doc. 44. The clerk of court shall amend the caption to reflect the above.

**BACKGROUND**

Plaintiff filed her complaint *pro se* on October 2, 2015. Doc. 1. On October 7, 2015, Magistrate Judge Gordon P. Gallagher granted Plaintiff's request to proceed *in forma pauperis* and ordered appointment of a guardian ad litem. Doc. 4. Attorney Megan Anne Baker accepted the appointment as guardian ad litem on a pro bono basis. Doc. 5.[2]

Later the same month, Plaintiff sought appointment of a pro bono lawyer. On November 17, 2015, Judge Gallagher granted Plaintiff's request and placed her on the list seeking pro bono representation under the court's Civil Pro Bono Panel, D.C.COLO.LAttyR 15. Doc. 9. Pro bono counsel Chuan "CiCi" Chen and Douglas L. Abbott accepted the appointment and entered appearances in respectively March 2016 and November 2016. Docs. 13, 47. Pursuant to initial review procedures for in forma pauperis complaints, Judge Gallagher required Plaintiff to amend her complaint. Doc. 18. Through counsel, Plaintiff did so on June 30, 2016. Doc. 19.

On July 1, 2016, the case was redrawn to Judge William J. Martínez, who referred the case to this magistrate judge for nondispositive proceedings. Docs. 20–22. On September 1, 2016, the parties consented to this magistrate judge's jurisdiction to hear the case under 28 U.S.C. § 636(c). Doc. 34. Judge Martínez then referred the case to the undersigned for all purposes. Doc. 36. After Defendants moved to dismiss, the parties agreed that Plaintiff could file a second amended complaint. Plaintiff's second amended complaint brought two claims under 42 U.S.C. § 1983: violation of her First Amendment rights of freedom of speech and association (first claim), and retaliation for her exercising the right to petition (second claim). Doc. 39 ("SAC"). Plaintiff subsequently dismissed the retaliation claim. Doc. 52.

---

[2] On April 27, 2017, the court granted the guardian ad litem's motion to withdraw. Doc. 75.

Plaintiff alleges *inter alia* that

> At all relevant times during Ms. Saunders's commitment at Platte Valley, Platte Valley has maintained a stated policy prohibiting its youth residents from accessing "local media[,] including newspapers and TV news." * * * Ms. Saunders has a First Amendment right to freedom of speech and association that has been violated by Defendants' policy to categorically ban access to local news media.
>
> The policy as established, maintained, and enforced by Defendants prevents youth residents and detainees from receiving local news media, whose access is important to the rehabilitative nature of the youths' commitment or detention at Platte Valley.
>
> Such a policy, both facially and as applied to Ms. Saunders, violates the free speech and association rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. * * * Accommodating Ms. Saunders's First Amendment right to free speech and association through access to local news would not place on Platte Valley or other DYC detention centers an undue burden with respect to their guards or staff members, their other youth residents or adjudicated delinquent juveniles, or their allocation of resources.

Doc. 39, SAC ¶¶ 14, 79–81, 86. Plaintiff requests "[a]ppropriate prospective injunctive relief against Defendants prohibiting further violations of Ms. Saunders's First Amendment rights." *Id.* at p. 15.

On October 25, 2016, the court set a final pretrial conference in February 2017 and a two day bench trial in March 2017. Docs. 44, 45. On January 24, 2017, the parties jointly moved to continue the final pretrial conference because Plaintiff had a

> sentencing hearing on an unrelated criminal charge scheduled for February 17, 2017.… Depending on the sentence she receives, she may be transferred to the Colorado Department of Corrections before the trial in this action. … If she is moved, Ms. Saunders may no longer be subject to the Division of Youth Corrections policies she challenges in this lawsuit.

Doc. 57 at pp. 1–2. At Plaintiff's February 17 sentencing, she "was sentenced to probation … on an adult charge. … [S]he returned to Platte Valley to carry out adult probation concomitantly

3

with [her] juvenile commitments." Doc. 76 at p. 2. During the trial, Plaintiff was in DYC's custody, and she remained so when each side proposed findings of fact and conclusions of law on April 5, 2017. Docs. 70, 71.

However, on April 21, 2017, Plaintiff

> was arrested and taken to the Weld County jail for alleged violations of her probation terms. On May 15, 2017, she stipulated to the revocation of her adult probation and a three-year sentence in the Department of Corrections ["DOC"]. … Defendants are currently seeking release of mittimus from the juvenile courts on her remaining commitments.

Doc. 76, motion to dismiss, at pp. 2-3. Plaintiff does not dispute these facts. It is also undisputed that Plaintiff is over 18 years but less than 21 years of age, and that the upper limit for DYC jurisdiction is 21 years of age.

## ANALYSIS

Defendants argue that their "present and future lack of custody of Ms. Saunders renders this case moot, because the only redress the Court could fashion for her complaint would be prospective," and "there is no future conduct to enjoin." Doc. 76 at p. 3.[3] As Plaintiff notes, mootness is an issue of subject matter jurisdiction that may be raised at any stage of the proceedings. *Kennedy v. Lubar*, 273 F.3d 1293, 1301–02 (10th Cir. 2001). Defendants raise the issue via Federal Rule of Civil Procedure 12(b)(1). The court is to "appl[y] a rigorous standard of review when presented with a motion" to dismiss for lack of subject matter jurisdiction. *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002). "Once subject matter jurisdiction is challenged, the party claiming jurisdiction bears the burden of proving it by a preponderance of the evidence." *EEOC v.*

---

[3] A claim against state officials in their official capacities for relief other than prospective injunctive relief would be subject to Eleventh Amendment state sovereign immunity. *See, e.g., Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1259–60 (10th Cir. 2002) (discussing exception to immunity under *Ex Parte Young,* 209 U.S. 123 (1908)).

*CollegeAmerica Denver, Inc.,* 75 F. Supp. 3d 1294, 1298 (D. Colo. 2014), *recon. den'd,* 2015 WL 6437863 (D. Colo. Oct 23, 2015) (citing *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir. 1999)).

Mootness can be either constitutional or prudential. Defendants argue that Plaintiff's case is moot under the constitution's requirement that "an actual controversy … be extant at all stages of review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 308 (2012) (internal quotation marks and citations omitted). "Mootness is found when events outside the litigation make relief impossible. … Events may supersede the occasion for relief, particularly when the requested relief is limited." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quoting 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3.1, at 56, 59–60 (3d ed. 2008) (footnotes omitted)). Plaintiff concedes that she is no longer in DYC's custody because she is serving a three year sentence in DOC. Since she is no longer subject to the DYC policy that is the subject of Plaintiff's lawsuit, it is not possible for the court to enter any prospective injunctive relief for her against Defendants.

However, Plaintiff argues that her case is not moot because it is "capable of repetition yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). This exception is a "narrow" one, to be applied only in "exceptional" circumstances. *Jordan,* 654 F.3d at 1035.

> [O]utside of the class-action context, the doctrine [has been] limited to the situation where two elements combine []: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.

5

*Jordan,* 654 F.3d at 1035 (quoting *Weinstein*, 423 U.S. at 149). Plaintiff bears the burden of proving both elements. *Id. See also Ind v. Colo. Dep't of Corr.,* 801 F.3d 1209, 1216 (10th Cir. 2015) (applying *Jordan,* prisoner's challenge of a policy in administrative segregation unit was mooted by his transfer to the general prison population).

In this case, the court need not address the first element because Plaintiff has not shown the second. A reasonable expectation that the same complaining party will be subjected to the same action or policy again requires showing *present* facts that make future application of the same policy to the plaintiff reasonably plausible. *See, e.g., Davis v. Fed. Bureau of Prisons,* No. 15-CV-0884-WJM-MJW, 2016 WL 1156755, at *3 (D. Colo. Mar. 24, 2016) ("Defendant previously implemented the CRs after Plaintiff's SAMs had expired. … Thus, Defendant has previously imposed restrictions after others were no longer in effect and may do so again. Furthermore, no additional conduct by the Plaintiff would be required to reimplement the restrictions."). If the court must assume that the plaintiff will engage in additional conduct, this does not suffice. *See, e.g., Ind*, 801 F.3d at 1216 ("we decline to assume [t]he [plaintiff] will repeat the misconduct that previously got him sent to administrative segregation").

Plaintiff has not shown a reasonable expectation that she will be subjected to the DYC's policy again. Plaintiff does not dispute Defendants' assertion that she is serving a three year sentence in DOC, at the end of which she will be 21 years of age and thus beyond DYC's jurisdiction. Plaintiff suggests that nothing *bars* DOC from returning her to DYC before she has completed her sentence at DOC, but Plaintiff does not cite any law, DOC regulations, or facts that suggest DOC might actually do so. To the contrary, Plaintiff is in DOC custody only as a result of violating her parole on the adult charge while she remained in DYC custody. Plaintiff

6

also does not dispute Defendants' assertion that they have requested the mittimuses ordering her commitment to DYC be vacated.

Plaintiff argues that she need not show that she is likely to be subject to DYC's policy again so long as other youths will still be subject to the same policy. Doc. 77 at pp. 6–7. Plaintiff cites cases from a handful of courts outside of the Tenth Circuit, but only the cases from the Ninth Circuit directly support this legal principle. *See United States v. Sanchez-Gomez,* 859 F.3d 649, 655 (9th Cir. 2017); *Buzancic v. Kane*, No. CV-09-1943, 2011 WL 336395, at *2 (D. Ariz. Jan. 31, 2011). Plaintiff's other cases found claims were still live, but based on different facts. In *Adams v. Duncan*, 179 F. Supp. 3d 632, 646 (S.D. W.Va. 2016), the plaintiff brought a putative class action,[4] and the court could still award part of the relief that the named plaintiff requested. In *Ukrainian-American Bar Association, Inc. v. Baker*, 893 F.2d 1374, 1377 (D.C. Cir. 1990), an association asked the immigration agency to inform detained aliens from Eastern Europe that the association would represent them pro bono in asylum requests. The agency declined to do so and would allegedly continue to do so. Thus, the association's claim regarded not just the specific alien whose situation had catalyzed the association's complaint (and who had long since left the country) but rather the policy that the agency continued to apply to the association as to aliens detained in the future.

Assuming that the Tenth Circuit would recognize the same modification of *Ex Parte Young* as the Ninth Circuit, it would not apply here. Plaintiff notes that this doctrine "applies with full force where plaintiff seeks to represent interests broader than plaintiff's own interests." Doc. 77, Response brief at p. 7. *See, e.g., Sanchez-Gomez,* 859 F.3d at 655 ("Defendants seek

---

[4] "[I]n the context of class actions … the Supreme Court has applied a more 'flexible' approach to the mootness doctrine. …The burden of establishing that a claim is moot is heavy and it belongs to the party asserting mootness." *Adams*, 179 F. Supp. 3d at 645 (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980)).

relief not merely for themselves, but for all in-custody defendants in the district. Thus, defendants are making class-like claims and asking for class-like relief."). Plaintiff has not sought to represent interests broader than her own. To the contrary, Plaintiff recognized that to prove her claim, she had to show that accommodating her First Amendment right would not impact prison resources. Doc. 71, Plaintiff's proposed findings and conclusions, at p. 14 (citing the third factor of *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)). Plaintiff specifically argued that the injunctive relief that she requested – for Platte Valley to screen her personal subscription to the Denver Post – would not be burdensome to Defendants because they would have to screen only the single copy for Plaintiff. Doc. 39, SAC ¶ 86 and request for relief at p. 15; Doc. 71, proposed findings and conclusions at pp. 9, 15; Doc. 72, transcript of trial, March 21, 2017 at pp. 6-7, 34-35.

Plaintiff's proposed final order does refer to "screen[ing] personal *subscriptions* to local print news," and proposes that "Defendants must develop a policy or practice consistent with this Order." Doc. 71, proposed findings and conclusions at p. 16 (emphasis added). But Plaintiff simultaneously points out that Platte Valley had no record of anyone else making such a request:

> Although witnesses for Defendants testified that it would take "[a] tremendous amount of staff time" to provide local print news, Saunders has not made a request that Defendants provide *The Denver Post* for all youth residents, such that multiple copies may need to be screened at one facility or across facilities. Rather, *Defendants did not demonstrate a tremendous burden on resources or staff allocation to screen the only requested subscription for a local newspaper they have received.* And Defendants did not identify other youth residents across the DYC facilities who had made a similar request for a local newspaper in the many years the policy has been in place. Tr. at 168:4-10.

*Id.* at p. 9 ¶ 43 (emphasis added).

> Saunders does not seek to require that Defendants themselves *provide* local news to all residents. Rather, Saunders proposes to

8

>accommodate her right to access news by screening her requested personal subscription to *The Denver Post*.
>
>The burden to conduct this type of screening is extremely low on Defendants' resources where evidence indicated that no other requests for personal subscriptions to local newspapers have occurred in the history of DYC's ban, and where testimony consistently revealed that the time required to screen—and remove, if necessary—any objectionable material would be less than fifteen minutes. * * * [S]creening of Saunders's requested personal subscription is one ready alternative that would impose little cost to Defendants.

Doc. 71, proposed findings and conclusions at p. 15 ¶¶ 25-26, 29 (emphasis original).

DYC has argued (among other things) that if Plaintiff is granted her request, DYC would have to change its policy across the board (doc. 72, transcript of trial, March 21, 2017 at p. 12), and other youths would likely make the same request. Doc. 73, transcript of trial, March 22, 2017 at pp. 434-35. But regardless of what DYC believed the future impact would be of Plaintiff's request, Plaintiff limited her requested relief to her own subscription to the Denver Post. Plaintiff cannot now recharacterize her claim and the relief she seeks in order to avoid the second element of the *Ex Parte Young* exception to mootness. *See, e.g., Buzancic v. Kane,* No. CV-09-1943, 2011 WL 336395, at *2 (D. Ariz. Jan. 31, 2011) ("Petitioner, who only sought relief for himself in his habeas petition, cannot properly forestall a mootness dismissal under the 'capable of repetition' exception by recharacterizing his petition as a generic challenge to ICE's § 1159 detention policy," internal quotation marks omitted).

In short, Plaintiff was faced with a strategy choice. If she requested that all similarly-situated youths in Platte Valley should be permitted personal subscriptions to local news (or a sufficient number of such subscriptions to be shared), this would likely avoid the mootness issue that would arise if Plaintiff was moved. But it would also make proof of the third *Turner* factor more difficult because Plaintiff would have to show that screening multiple copies of local

9

newspapers would not impact prison resources.  If Plaintiff instead restricted her claim to only her personal subscription request, this made the third *Turner* factor less difficult but left the possibility of mootness if she were moved.  Plaintiff's pro bono counsel ably represented her in making the strategy choice, and Plaintiff cannot reverse course at this late phase.  Accordingly, the case is now moot.

## CONCLUSION

Because Plaintiff's claim is moot, the court lacks subject matter jurisdiction.  Plaintiff's claim is DISMISSED WITHOUT PREJUDICE.  Each party shall bear its own costs.

DATED this 3rd day of August 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge